

FILED

September 22, 2017

TN COURT OF
WORKERS'
COMPENSATION
CLAIMS

Time 11:40 A.M.

## TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT JACKSON

| | | |
|---|---|---|
| GARY BIRCHETT, | ) | Docket Nos. 2010-07-0030 |
| **Employee,** | ) | 2010-07-0031 |
| | ) | |
| v. | ) | State File Nos. 2792-2017 |
| GAMBRELL HICKORY MILL, | ) | 2793-2017 |
| **Uninsured Employer.** | ) | |
| | ) | **Judge Allen Phillips** |

---

## EXPEDITED HEARING ORDER DENYING MEDICAL AND TEMPORARY DISABILITY BENEFITS

---

This case came before the undersigned Workers' Compensation Judge on August 30, 2017, on Gary Birchett's Request for Expedited Hearing. Mr. Birchett requested medical and temporary disability benefits for two alleged back injuries. The dispositive issue is whether Mr. Birchett was an employee of Gambrell Hickory Mill (Gambrell) or an independent contractor.[1] The Court holds Mr. Birchett was an independent contractor and therefore is not entitled to the requested benefits.

### History of Claim

Mr. Birchett is a diesel mechanic. On different occasions, he has owned and operated his own repair shop. In May 2016, heart bypass surgery forced him to close his most recent business. Afterward, he performed mechanic work for different individuals on his own and worked for a longtime acquaintance who owns a shop in Alabama. Mr. Birchett moved his toolbox to the shop in Alabama, and he claimed he continued working there until Mr. Jeffery Gambrell, the owner of Gambrell Hickory Mill, offered him a job in August 2016.

---

[1] Gambrell also contested the occurrence of the injuries and medical causation. Because of the Court's holding regarding Mr. Birchett's employment status, it need not address these defenses.

Specifically, Mr. Birchett claimed Mr. Gambrell telephoned him to offer an "easy" job that involved only "pointing fingers" to assist other mechanics. He claimed Mr. Gambrell agreed to pay him a weekly salary of $1,200 and said he should report to work each morning at 8:00 a.m. Mr. Birchett claimed he accepted the offer and with his brother's help moved his toolbox from the shop in Alabama to Mr. Gambrell's shop. He stated he would not have moved the large toolbox had he not intended on working only for Mr. Gambrell. He further believed his agreement to work for Gambrell bound him exclusively to Gambrell.

Conversely, Mr. Gambrell contended Mr. Birchett contacted him looking for work. Mr. Gambrell knew Mr. Birchett was a mechanic because he had patronized Mr. Birchett's shop for repairs on Gambrell vehicles. Mr. Gambrell claimed that, in August 2016, Mr. Birchett told him that health issues forced him to close his shop but he had several customers for whom he could perform work if he could use Gambrell's shop. Mr. Gambrell replied that he had no present need for mechanic work. However, in an effort to help Mr. Birchett "get back on his feet," he said he would allow him to conduct business in his shop, with no fee, and would offer Mr. Birchett mechanic work for Gambrell as it became available. Mr. Gambrell explained his primary business was the manufacture of hickory ax handles but that he also owned several vehicles and equipment that needed repair occasionally.

Mr. Gambrell recalled Mr. Birchett offered his mechanic services to others while working at his shop. In fact, Mr. Gambrell testified that on the day of the hearing, a customer called looking for Mr. Birchett. Further, Mr. Birchett asked if Gambrell would "build [his wife] an office" at the shop to carry on Mr. Birchett's business.

As for Mr. Birchett's pay, Mr. Gambrell produced a ledger memorializing the payments he made to Mr. Birchett by check during their arrangement. The checks matched repair invoices reflecting Mr. Birchett's work on Gambrell vehicles. Mr. Gambrell said he gave the ledger to his accountant, who produced a Form 1099 for Mr. Birchett. He also noted Mr. Birchett asked to be paid in cash. For his part, Mr. Birchett disputed the accuracy of the amounts on the invoices but admitted his handwriting appeared on them. The check stubs matched the payments in the ledger.

Regarding the injuries at issue, Mr. Birchett claimed he first injured his back on an uncertain date in September 2016 when flipping a tire. Mr. Gambrell denied knowledge of the event. Records documenting the medical care Mr. Birchett received in September 2016 reflect that Mr. Birchett "[had] his own business."

Mr. Birchett claimed a second back injury on October 21 when he fell from a tractor. Mr. Gambrell questioned whether he injured his back in a fall because his son

witnessed Mr. Birchett "wreck" his motorcycle on Gambrell's premises on that day. Medical records again noted Mr. Birchett was "self-employed."

Mr. Birchett last worked at Gambrell on November 3. He claimed the alleged injuries suffered at Gambrell still prevent him from working except in an "advisory position" for his Alabama acquaintance. His wife called the payments from the Alabama acquaintance "loans" and corroborated her husband's testimony that he only works for his friend in an "advisory" position. However, on cross-examination, Mr. Birchett admitted his acquaintance in Alabama provided him a Form 1099 for mechanic work. He requested the Court order Gambrell to pay for his lost time and provide ongoing medical treatment.

## Findings of Fact and Conclusions of Law

### Standard applied

Mr. Birchett must come forward with sufficient evidence from which the Court can determine he is likely to prevail at a hearing on the merits. Tenn. Code Ann. § 50-6-239(d)(1) (2016).

### Analysis

Tennessee Code Annotated section 50-6-102(12)(D)(i) provides:

In a work relationship, in order to determine whether an individual is an "employee," or an "independent contractor," the following factors shall be considered:

(a) The right to control the conduct of the work;
(b) The right of termination;
(c) The method of payment;
(d) The freedom to select and hire helpers;
(e) The furnishing of tools and equipment;
(f) Self-scheduling of working hours; and
(g) The freedom to offer services to other entities[.]

However, these factors are not absolutes, but merely a means of analysis. *Thompsen v. Concrete Solutions*, 2015 TN Wrk. Comp. App. Bd. LEXIS 3, at *15 (Feb. 10, 2015). Moreover, no single aspect is conclusive, but instead "the trier of fact must examine all relevant factors and circumstances" of the relationship. *Boruff v. CNA Ins. Co.*, 795 S.W.2d 125, 127 (Tenn. 1990). If Mr. Birchett establishes the existence of an employment relationship under this standard, then it becomes Gambrell's burden to prove

3

he was an independent contractor. *Galloway v. Memphis Drum Serv.*, 822 S.W.2d 584, 586 (Tenn. 1991). The Court will examine the statutory criteria in turn.

*Right of control*

The Tennessee Supreme Court "has repeatedly emphasized the importance of the right to control" and that "the relevant inquiry [is] whether the right existed, not whether it was exercised." *Thompsen,* at \*15. Here, Mr. Birchett performed repair work as he saw fit, not under Gambrell's control and without Mr. Gambrell's participation. Moreover, Gambrell's primary business was not mechanic work but rather wooden handle manufacturing. Mr. Gambrell's skills are not in the area of mechanical repair, but he instead relied upon Mr. Birchett's expertise.

Likewise, Mr. Gambrell explained from the beginning of the relationship that he did not need a full-time mechanic but only someone to do work on a piecemeal basis. Mr. Birchett's claim that Mr. Gambrell offered him a job involving only advising other mechanics is inconsistent with the evidence as a whole, and the Court finds Mr. Gambrell's testimony more credible. Thus, as to the right of control, the Court finds Mr. Birchett had the ability to control how he did the work from the outset and throughout the parties' relationship.

*Right of termination*

"The power of an employer to terminate the employment at any time is incompatible with the full control of the work which is usually enjoyed by an independent contractor, and hence is considered as a strong circumstance tending to show" an employment relationship. *Peters v. Jonathan Mitchell,* 2016 TN Wrk. Comp. App. Bd. LEXIS 7, at \*10 (Feb. 8, 2016). Here, either Mr. Birchett or Mr. Gambrell could have terminated their relationship at any time, and Gambrell had no more power to end it than did Mr. Birchett. This factor supports a finding that Mr. Birchett was an independent contractor.

*Method of payment*

The Court finds this factor supports a finding of an independent contractor relationship. The Court found Mr. Gambrell's version of the inception of the parties' arrangement more credible. Likewise, it finds his testimony regarding the payment arrangements more credible. Further, the payment history reflected that Mr. Birchett received checks matching the actual services performed and not regular payments indicative of an average weekly wage. Mr. Birchett conceded Gambrell paid him on a different basis for certain activities, such as changing tires, and Mr. Gambrell effectively explained the amounts shown on the invoices. Importantly, the payment ledger and Mr.

Birchett's own evidence from his check stubs match identically. In short, the Court finds that Mr. Birchett did not receive a regular average weekly wage like an employee but instead received a per-job payment like an independent contractor.

*Freedom to select and hire helpers*

This factor supports an independent contractor relationship. Mr. Birchett admitted hiring a "helper," namely his brother, to work with him at Gambrell's shop and that he paid his brother from the money he made. This is directly indicative of an independent contractor relationship, as Mr. Birchett introduced no proof that his brother was a Gambrell employee. Additionally, the Court believes Mr. Gambrell's testimony that Mr. Birchett inquired as to whether he would allow his wife to have an office at Gambrell's site to conduct Birchett's business. This, too, is consistent with the Birchetts' understanding that Mr. Birchett worked as an independent contractor.

*Furnishing of tools*

This factor supports an independent contractor relationship. Mr. Birchett used his own tools. He provided a photograph taken in Gambrell's shop of a large cabinet labeled with the name "Gary Birchett Diesel Repair." He identified the cabinet as the same one previously used in his own shop and in the shop in Alabama. Thus, it is clear Mr. Birchett not only provided the tools of his trade but also used them to perform repairs on Gambrell equipment instead of using tools provided by Gambrell.

*Self-scheduling*

The Court notes Mr. Birchett's testimony that Mr. Gambrell told him to report at 8:00 a.m. each morning. However, the payments made to Mr. Birchett reflected neither a regular wage nor a regular amount of hours. To the contrary, the payment ledger showed various payments for piecemeal work, and the invoices indicated Mr. Birchett worked for different amounts in each pay period. These facts support a finding that he worked at his own pace and at times conducive to completing a given task as opposed to working set hours.

*Freedom to offer services to others*

The Court finds this factor supports a finding of an independent contractor relationship. Mr. Gambrell explained he did not have sufficient business to hire a mechanic but provided work to Mr. Birchett as it became available. Mr. Gambrell testified that Mr. Birchett actually performed work for others at Gambrell's shop; Mr. Birchett offered no rebuttal.

5

*Conclusion*

Based upon the statutory factors, the Court holds Mr. Birchett was an independent contractor and not an employee of Gambrell Hickory Mill. Because of this finding, the Court need not address the issues regarding entitlement to medical and temporary benefits.

**IT IS, THEREFORE, ORDERED** as follows:

1. Mr. Birchett's claim for benefits is denied at this time.

2. This matter is set for a Scheduling (Status) Hearing on **Thursday, October 26, 2017, at 10:30 a.m. Central time. You must call 731-422-5263 or toll-free 855-543-5038 to participate in the Hearing.**

**ENTERED this the 22nd day of September, 2017.**

**Allen Phillips, Judge**
**Court of Workers' Compensation Claims**

**APPENDIX**

Exhibits:

1. Bureau's Expedited Request for Investigation Report
2. Affidavit of Gary Birchett-DOI: 9/19/16
3. Affidavit of Gary Birchett-DOI: 10/21/16
4. Affidavit of Dr. Stephen Collier
5. Affidavit of George D. Moore
6. Medical Records of Jackson-Madison Co. General Hospital
7. Letter from Dr. Collier regarding permanent restrictions
8. Photographs of toolbox, tire, and tractor (collective)
9. Memorandum stating no liability of Mr. Gambrell for injuries
10. Invoices for repair work performed by Mr. Birchett
11. Mr. Birchett's check stubs from payments by Gambrell
12. Gambrell's Payment Ledger for checks to Mr. Birchett
13. Copy of Mrs. Birchett's "LinkedIn" page advertising Birchett Diesel Repair

Technical record:

1. Petition for Benefit Determination-DOI: 9/19/16
2. Petition for Benefit Determination-DOI: 10/21/16
3. Dispute Certification Notice-DOI: 9/19/16
4. Dispute Certification Notice-DOI: 10/21/16
5. Request for Expedited Hearing-DOI: 9/19/16
6. Request for Expedited Hearing-DOI: 10/21/16
7. Order Denying Decision on the Record Expedited Hearing
8. Transfer Order

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of this Expedited Hearing Order was sent to the following recipients by the following methods of service on this the 22nd day of September, 2017.

| Name | Certified Mail | First Class Mail | Via Email | Service Sent To: |
|---|---|---|---|---|
| Gary Birchett, Self-Represented Employee | X | X | X | 2051 Major Hill Rd. Bethel Springs, TN 38315 lbirchett@yahoo.com |
| Lewis L. Cobb, Esq., Attorney for Employer | | | X | lewiscobb@spraginslaw.com |

Penny Shrum

**Penny Shrum, Clerk of Court**
**Court of Workers' Compensation Claims**
**WC.CourtClerk@tn.gov**

7